At this time, we'll hear Rajaratnam v. United States. Oh yeah, this is, thank you. This is the case with Judge Presco, right? That's right, Your Honor. Now I'm, now I'm there. And it is also a case in which our burden on this motion for a certificate of appealability is to establish merely that there is a debatable question. My name is Christine Chung. I represent the petitioner, Raj Rajaratnam. Your Honor, this is an appeal, or a potential appeal, in which the central holding of Newman, a holding of Newman that has not been changed through subsequent developments, is at issue. And that holding is whether in a remote tipper scenario, where the defendant is a remote tippy, did not have dealings himself with the insider, the government adduced proof that the defendant knew that the insider had disclosed confidential information in exchange for a personal benefit. So, for example, the case Martoma that was decided a few weeks ago was about the definition of personal benefit. The benefit that was in fact received by the insider. This case is about certain counts and certain trades. Mr. Rajaratnam is not here to say that he is innocent of all counts. He has served six years of an 11-year sentence. But he is here to say that on the counts where he was a remote tippy, the government did not adduce proof that he knew that the insider had received a personal benefit. That the insider had acted from a motive of disclosing personal, disclosing confidential information to get a personal benefit. And what the district judge did in this case, Judge Preska, was instead of finding evidence in the record of knowledge, she relied on an inference that Newman itself says is impermissible. And because of that clash, your honors, we're here to ask for permission to fully brief and argue this issue. For the purposes of this motion, I'd like to focus on count two. Because I think it draws the straightest line in illustrating the defect in the government's proof. Count two encompassed three trades. Polycom, Hilton, and Google. And it's undisputed, your honors, that there was one intermediary, the same intermediary for those three trades. A woman named Rumi Khan. Who was an employee of Galleon. Who got fired. Gotman's fund, right? Yes. And was fired and at this time was acting as an independent analyst. Sounds very remote to me. Well, your honor, here's what the government, I think there will be no dispute on the evidence. And what evidence there was and was not. Through questioning of me and the government. So let me lay out what happened here. In these three trades, Mr. Rajaratnam, it is undisputed, did not have any dealings with the insiders. He only dealt with Ms. Khan. The government did not call the insiders. The government did not charge the insiders. Wait a second, though. The government did produce text messages from Khan, or from Ratlan to Khan and Khan to Ratlan. Where Khan thanked Ratlan for the tips, right? Or Ratlan thanked Khan for the tips. Yes, your honor. And then he gave her inside information that she could trade on, didn't he? Your honor, let me be careful with the evidence.  But none of the text said anything about the circumstances in which the insiders disclosed the information to the intermediary, Ms. Khan. She knew she was an employee of Galleon. She wasn't an employee of Google. So she had to get the information from somewhere, right? Well, she had to get the information from somewhere. So what does Martoma, Dirks, and Newman say about that? They say the reason why the government has to put on proof that the defendant knew what benefit the insider received is because there are many circumstances in which the insider can and does disclose information that is benign, that is not for personal benefit. And those include purposely disclosing information to market analysts who do their jobs in keeping the markets up and running. Secondly, inadvertently. Thirdly, out of mistaken belief that it's not inside information. Fourth, because, as in the Dirks case, you're a whistleblower and you're trying to get information out to the market. So Mr. Rajaratnam, in his undisputed, did not know with respect to these counts, which account for $23 million of the lost figure attributed to him, anything about who the insiders were, where they worked, or why they disclosed information to Ms. Khan. So why is it that the government is saying that they did put on proof that's sufficient to overcome the habeas challenge? The government is saying, and they're very explicit about this, Mr. Rajaratnam was a sophisticated businessman who knew from the fact that he gave money to intermediaries, that he himself gave money to insiders on other occasions, he knew that this kind of information would not be disclosed for free, would not be disclosed out of altruism. But that inference is exactly the inference that was rejected in the Newman case. And, Your Honor, I want to be very careful about this and read from the Newman case. And this is at 773 F. 3rd at 454. The government now invites us to conclude that the jury could have found that the appellants knew the insiders disclosed the information for some personal reason rather than for no reason at all. But the Supreme Court affirmatively rejected the premise that a tipper who discloses confidential information necessarily does so to receive a personal benefit. Newman itself, Judge Wesley, was a case in which Mr. Newman was accused and the proof of trial showed that he gave $175,000 to the intermediary. And this Court said that even that fact did not mean that you could impute to the insider the same non-altruistic motive. That's a step too far. So here we have a situation. The only other thing that Judge Preska relied on, and I want to be very clear about this, Your Honor, because it's very difficult to establish a negative in the record. Judge Preska found that there was proof that, based on the government's representation that's made on pages 9 and 24 of their briefs below, that Ms. Kahn told Mr. Rajaratnam the name Hussain, who was one of the insiders, and that Hussain was going to get inside information about Google. That is not true. When you go to the government's brief and you look at the exhibits and the testimony that is cited, there is no evidence there that Mr. Rajaratnam was ever made aware of Ms. Hussain's name, of what the relationship between Ms. Hussain and Ms. Kahn was, or what the circumstances were in which Ms. Hussain got disclosed information. So this is a circumstance where, exactly as in Newman, there was no proof whether Mr. Rajaratnam knew that the insider gave the information to get a personal benefit, or perhaps Ms. Kahn got the information because she tricked the insider, or perhaps she got the information because the insider inadvertently disclosed it. Ms. Chung, what's the relief you want from us, and what is the standard that we're supposed to apply here? The standard, Your Honor, is not whether we're likely to succeed on the merits even. It's whether or not it's a debatable issue. And I think I've reached my conclusion, which is that because this is a case in which, when you look at the paragraph in Judge Preska's opinion, she relies on two things. One, a misapprehension of the record. She doesn't even cite to the record. She cites the government's brief. Two, an inference that Newman rejected. And at a minimum, Your Honor, we believe that Mr. Rajaratnam should have the chance to be heard on that. Thank you. Good morning, Your Honors. Michael Ferrara for the government. I have represented the government below throughout the habeas proceedings, but I did not represent the government prior to the habeas proceedings. Let me just start by saying my adversary is correct. The way I wrote that in the brief, I regret. It was poorly worded and gave the impression that Kahn had told Rajaratnam the name of the insider. That was not the evidence, and I would like to just correct the record on that. But I want to step back before I address this actual innocence argument, and I want to just make one thing clear. There was no error here. In light of recent legal developments, there was no error. What we are now arguing is Rajaratnam's knowledge of the benefits to the insiders. Judge Hallwell instructed the jury on that. He instructed the jury on it. He instructed the jury that Rajaratnam had to know, quote, that the information was MNPI, that if disclosed by an insider, would directly or indirectly obtain some personal benefit from the disclosure, end quote. Assuming that charge was correct, what was the evidence? The evidence on that charge, what my adversary wants to do is cap in the evidence, as if to say in a trial a judge says to a jury, okay, this part of the witness's testimony goes to count one. This part of the witness's testimony goes to count two. That's not how it works. Of course the court knows. So what the jury had in front of it was evidence over weeks of one of the most sophisticated insider trading schemes ever charged and proven in this district. Rajaratnam paid, directly paid insiders multiple times. They heard about his payments to Kumar, which at Rajaratnam's, it was Rajaratnam's idea that those payments would go through someone in a different name, through another country. These were deliberately sophisticated transactions that were supposed to be hard to trace. The jury heard that. The jury heard that Rajaratnam was trying to help or cover up his crimes. They heard Adam Smith, a Galleon employee, testify about not putting things in writing, about using the word I-E-Y-E, eyes, to refer to some of the trades, I-C-S-T and others. They heard wiretaps of Rajaratnam and Chiesi talking about covering up the crimes and Chiesi's relationship with her insider. And my point here, Your Honors, is to say it's not that the jury did not, it would have been inappropriate for the jury to have put all that out of its mind when saying to itself, okay, now Rajaratnam is sharing tips with Rumi Khan. We can infer that he understood that Rumi Khan had to pass that up the line. And again, it's not to say that we're relying simply on the number of intermediaries, but what we're saying here is where there's one step and the step is a former employee of Galleon who understood how that place worked, who was working with Rajaratnam for years, and now Rajaratnam is giving her tips, the jury was absolutely entitled to infer that he understood she would be giving the insider a benefit. Given the very low threshold with which we are presenting, why not give the petitioner an opportunity to make this case to the Court of Appeals? We're just a motions panel, of course. So all that you say may be entirely sound, but why not present this to a merits panel? Because it's a waste of judicial resources, Your Honor. There's no error. There's really simply no error. Put aside, again, the jury was instructed. Just the judicial resources argument, ultimately. And again, just, yes, abiding by the legal standard here. There's not even an error, much less actual innocence. We would be wasting the time of another panel. You would be wasting the time of another panel in a case where there is simply no error. There was no instructional error. The evidence was overwhelming. This case does not need to be appealed at this point. In your view, it's a sufficiency case, and from your standpoint, given that you take the position that there's not an instructional error, that the evidence, in the light most favorable to the government, doesn't show any appealable issue at all? So that's absolutely right, Your Honor. That is our position. But I want to step one step back, which is that would be our position on a direct appeal. Our position here is that Raja Ratnam cannot carry his burden of establishing he was actually innocent. Yeah, and that's what Judge Prescott, that troubled her also. Correct. And I just want to emphasize that our position is that's quite a higher burden than if we were here on direct appeal arguing sufficiency. That's different. Yes, fair enough. Right. Understood. I understand. Thank you. Thank you both. Thank you, Your Honor. We will reserve decision.